IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY BIGGS,

        Petitioner,                  No. CIV S-04-1169 FCD GGH P

    vs.

ARNOLD SCHWARZENEGGER, et al.,

        Respondents.          FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In 1985 petitioner was convicted of first degree murder and sentenced to 25 years to life.

        In this action petitioner challenges the 2002 decision by the California Board of Parole Hearings (BPH) finding him unsuitable for parole on two grounds: 1) the decision finding him unsuitable was not supported by some evidence; 2) the BPH found him unsuitable pursuant to an illegal no-parole policy.  See Petitioner's January 12, 2005, Supplemental Briefing.

        On May 1, 2006, petitioner filed a status report stating that on December 28, 2005, the BPH found him eligible for parole.  On June 7, 2006, petitioner filed a status report in CIV S-04-1439 FCD GGH P stating that on May 23, 2006, Governor Schwarzenegger reversed

1

the grant of parole.[1]  On September 21, 2006, the court ordered petitioner to show cause why this

action should not be dismissed as moot based on the Governor's reversal of the 2005 finding of

suitability.  On November 3, 2006, petitioner filed a response to the show cause order.

Were this court to find that the BPH's reliance on unchanging factors to find

petitioner unsuitable was constitutionally infirm, the remedy would not be to remand this action

to the BPH or the Governor for further proceedings.  Rather, the court would order that petitioner

be given an actual parole date.  For this reason, petitioner's claim alleging insufficient evidence

is not moot.  Accordingly, the court considers the merits of this claim.  However, as will be

discussed infra, petitioner's claim alleging a no-parole policy is moot.

After carefully considering the record, the court recommends that the petition be

denied.

II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

standards of review to be used by a federal habeas court in assessing a state court's adjudication

of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

(9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

between "contrary to" clearly established law as enunciated by the Supreme Court, and an

---

[1]  Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

1  "unreasonable application of" that law. Id. at 1519.  "Contrary to" clearly established law applies

2  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

3  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

4  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

5         "Unreasonable application" of established law, on the other hand, applies to

6  mixed questions of law and fact, that is, the application of law to fact where there are no factually

7  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

8  Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

9  AEDPA standard of review which directs deference to be paid to state court decisions.  While the

10  deference is not blindly automatic, "the most important point is that an *unreasonable* application

11  of federal law is different from an incorrect application of law....[A] federal habeas court may not

12  issue the writ simply because that court concludes in its independent judgment that the relevant

13  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

14  that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

15  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

16  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

17  authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

18         The state courts need not have cited to federal authority, or even have indicated

19  awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

20  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

21  contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

22  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

23  occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

24  established Supreme Court authority reviewed must be a pronouncement on constitutional

25  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

26  binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

1    However, where the state courts have not addressed the constitutional issue in

2    dispute in any reasoned opinion, the federal court will independently review the record in

3    adjudication of that issue.  "Independent review of the record is not de novo review of the

4    constitutional issue, but rather, the only method by which we can determine whether a silent state

5    court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.

6    2003).

7    Petitioner filed a habeas corpus petition in the San Mateo Superior Court raising

8    the claims raised in this action.  The Superior Court issued a reasoned decision denying these

9    claims.  Answer, Exhibit E.  The California Supreme Court summarily denied petitioner's habeas

10   corpus petition raising these claims.  Answer, Exhibit D.  When reviewing a state court's

11   summary denial of a claim, the court "looks through" the summary disposition to the last

12   reasoned decision.  <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

13   III.  <u>Discussion</u>

14        A.  <u>Insufficient Evidence</u>

15        Since the approximate five years since the issuance of <u>McQuillion v. Duncan</u>, 306

16   F.3d 895 (9th Cir. 2002), we know this about the liberty interest implicated by California's

17   parole laws regarding indeterminate sentences, i.e., parole suitability hearings, which if

18   successful for the petitioner, will result in the establishment of an actual parole date (but never

19   less than the minimum term):

20        1. A liberty interest exists, <u>Irons v. Carey</u>, __F.3d__, 2007 WL 656345 (9th Cir.

21   2007) citing cases;

22        2. Reliance on unchanging factors in denying parole suitability *might* implicate a

23   violation of that liberty interest.  <u>Biggs v. Terhune</u>, 334 F.3d 910, 916 (9th Cir. 2003);

24        3. A finding by the Board of Parole Hearings (or at a later time, by the Governor)

25   concerning the circumstances or gravity of the crime in and of itself is sufficient to deny

26   suitability; <u>In re Rosenkrantz</u>, 29 Cal. 4th 616, 682, 128 Cal. Rptr. 2d 104, 161; <u>Irons</u>, at *5; but

4

the nature of the offense must be "particularly egregious" to constitute a basis to deny parole suitability. Rosenkrantz, 29 Cal. 4th at 683, 128 Cal. Rptr. 2d at 161.

   4. However, "particularly egregious" means nothing more than finding elements in excess of those "minimally necessary to convict." In re Dannenberg, 34 Cal. 4th 1061, 1095, 23 Cal. Rptr. 3d 417, 440 (2005);

   5. If the petitioner has served less than the minimum term of his indeterminate sentence, "all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." Irons at *5, but see footnote 1 of Irons expressing no opinion if the prisoner has served more than his minimum term, i.e., *maybe* that is the time frame against which reliance on unchanging factors is truly suspect[2];

   6. If the BPH determined that the crime was vicious, or performed in a callous manner, or the motive was trivial, and so forth – all factors relating to the circumstances of the crime – and such is adopted by the state courts on review, a federal court must find the state court decision(s) AEDPA-unreasonable before a writ of habeas corpus may be granted. Irons, supra.

   With respect, after Irons, the undefined "mights" and "maybes" serve as an indecipherable present guide to knowing just when the liberty interest in parole may be violated by reliance on unchanging factors. Moreover, one does not know whether such reliance, if it is ever held to be insufficient, is based on passage of time alone, or is an uncertain blend of crime circumstances and passage of time. The state courts' adoption of the BPH or Governor's decision about the circumstances of the crime is now essentially unreviewable – at least prior to

---

  [2] Nothing in California statutes or regulations, see Cal. Penal Code 3041, 15 CCR § 2402, would expressly so limit the decision of the BPH and Governor, thus the potential limitation must be of federal origin. However, as undue reliance on unchangeable factors has never been found thus far by the Ninth Circuit, the commencement point of the limitation, or the precise blend of crime circumstances and years since, has not been defined. We do know that in Irons, five times of application was insufficient. Irons did not decide that reliance on unchanging factors after the minimum term had been served was unlawful. We simply know that "maybe" that will be the case.

the expiration of the minimum term.  That is, the circumstances of the crime in terms of

viciousness, callousness, triviality and the like, is essentially an unchanging value judgment

whose correctness cannot often be disputed regardless of the time when such a judgment is made

– right after the conviction, just prior to expiration of a minimum term, well after the expiration

of a minimum term. [3]

        Review of the federal appellate cases demonstrates that no guided finding of

undue reliance on unchanging factors can be made in this case.  <u>Biggs v. Terhune</u>, <u>supra</u>, the case

that commenced the discussion on unchanging factors and involved the petitioner in the instant

case, involved the first degree bludgeoning murder of a witness facilitated, but not committed, by

Biggs.  He was denied parole eligibility at his initial hearing in 1999 in part because of the

gravity of the crime.  All might agree that such a murder was grave, and it will never be properly

classified as anything but such.  Nevertheless, the Ninth Circuit found that "continued reliance"

on unchanging factors could violate due process.   Although not stating such, the intimation of

<u>Biggs</u> was that the third or fourth time of reliance on the circumstances of the crime would be too

much.  Certainly, it was not understood by the undersigned from reading <u>Biggs</u> that the time at

which continued reliance would be too much would occur in 2010 – the time at which Biggs will

have served his minimum term.  Biggs' minimum term is served in 2010, and Biggs will have

had approximately 5 or 6 more hearings by that time.  However, subsequent Ninth Circuit cases

have not upheld the undersigned's reading of <u>Biggs</u>.

---

[3]  The undersigned has previously determined the arbitrary nature and lack of predictive
value generally found in a circumstances of the crime parole suitability denial based on
unchanging circumstances despite the passage of sixteen years and more from the date of the
conviction coupled with an unblemished prison record.  <u>See Irons v. Warden of California State
Prison-Solano</u>, 358 F. Supp. 2d 936, 947 (E.D. Cal. 2005).  That analysis, focusing on the
predictive nature of the crime for future violence in combination with expert psychiatric reports
or other forward looking evidence, has been cited with approval by the California Court of
Appeal.  <u>In re Elkins</u>, 144 Cal. App. 4th 475, 50 Cal. Rptr. 3d 503, 522 (2006); <u>In re Scott</u>, 133
Cal. App. 4th 573, 34 Cal. Rptr. 3d 905 (2005).  However, since that analysis only received the
comment that it was an "understandable [AEDPA] error" in the concurrence of Judge Reinhardt,
that analysis concerning the trigger time of undue reliance will not be utilized herein.

1    In Sass, no comparison review of other cases was undertaken, there was simply

2 the one sentence holding that the "evidence of Sass' prior offenses [prior DUIs] and the gravity

3 of his convicted offenses [DUI resulting in a death and injury] constitute some evidence to

4 support the Board's decision." Id., 461 F.3d 1123; the dissent disagreed, and found AEDPA

5 unreasonableness.  The Ninth Circuit was reviewing a third denial of suitability.  If jurists of the

6 Ninth Circuit cannot agree whether the circumstances of the crime can constitute some evidence

7 given three hearings, how will the BPH or the undersigned know when to stop using the

8 circumstances of a crime as the reason to deny parole eligibility.  What will be the analytical

9 watershed point of departure from routinely upholding the BPH assessment of the circumstances

10 of the crime, and more importantly, why?  Will the fourth hearing be sufficient, or should it be

11 the seventh?  Will the analysis simply hinge on the non-analytical fact that Sass will have passed

12 his minimum terms of years under his sentence?  Would a later BPT finding of egregiousness be

13 AEDPA unreasonable simply because Sass just passed his minimum term as opposed to just

14 before the expiration of his minimum term?  None of these questions have been answered.

15    In Irons, after five parole suitability hearings, the Ninth Circuit determined that

16 the second degree murder of a perceived thieving drug dealer by a wildly shooting, and then

17 stabbing, angry "victim" of the deceased was comparatively more egregious than the murder in

18 Sass.  Perhaps so; perhaps other jurists would locate this line in another position because of the

19 societal impact that drunk drivers impose in this country.  Both positions have their points.  But

20 one can validly question whether the ultimate goal of every parole eligibility hearing,

21 determining *future* safety of the community, can forever be based on personal judgments on the

22 comparative seriousness of crimes committed decades ago.

23    Nevertheless, taking an implied cue from Irons that the minimum term might

24 serve as an analytical change point, the undersigned finds that prior to that time, absent

25 extraordinary circumstances, the BPH determination on factors relating to the circumstances of

26 the crime are essentially unreviewable, i.e., the determination constitutes "some evidence"

1  sufficient to deny parole eligibility (suitability).

2          In the instant case, at the time of the 2002 suitability hearing petitioner had served

3  17 years of his minimum term of 25 years.  In finding him unsuitable, the BPH relied on

4  unchanging factors related to the circumstances of the crime.  Answer, Exhibit B, pp. 68-69.

5          Because circumstances of the crime alone can constitute some evidence, there is

6  no point in discussing the other factors of parole suitability, and whether some evidence existed

7  for the conclusions reached in the other factors by the BPT.[4]  Accordingly, the denial of this

8  claim by the Superior Court was not an unreasonable application of clearly established Supreme

9  Court authority.

10         B.  No Parole Policy

11         Petitioner argues that he has been denied parole pursuant to a no-parole policy.  In

12  support of this claim, petitioner cites Coleman v. Board of Prison Terms, CIV S-96-0783 LKK

13  PAN P.  In Coleman, the Honorable Lawrence K. Karlton found that under Governors Wilson

14  and Davis, the BPH disregarded regulations ensuring fair suitability hearings and instead

15  operated under a sub rosa policy that all murderers be found unsuitable for parole.  See

16  December 22, 2004, findings and recommendations, adopted by the district court on December 2,

17  2005.

18         Petitioner's assertion of a "no parole" policy in 2002 raises profoundly complex

19  issues in light of the Findings and Recommendations/Order of Adoption/Judgment in Coleman v.

20  Board of Prison Terms, CIV-S-96-0783 LKK PAN P, appeal pending.  In Coleman, the court

21  found that a no parole policy was in effect for California "lifers" in 1999 which infected

22  Coleman's BPT proceeding in 1999.  Coleman rejected the BPH's "so what" assertion that the

23

24          [4] Rosenkrantz also required that the then BPT also make an individualized consideration
    of the other factors regarding parole suitability.  Of course, the Commissioners always make such
25  a determination as the Commissioners know that they must.  Whether these determinations are
    supported by some evidence is another matter, but as long as the consideration is made, the
26  circumstances of the crime are sufficient to deny suitability.

1   presence of some evidence would ameliorate the policy because <u>Coleman</u> properly found a

2   biased decision maker to be structural error not susceptible to a harmless error standard.  The

3   remedy in <u>Coleman</u> required that petitioner be given a new hearing before an unbiased panel of

4   BPT commissioners.

5           Complex issues abound insofar as <u>Coleman</u> is urged by petitioner as applicable to

6   his 2002 BPH hearing.  Some of those issues are as follows: (1) was the holding in <u>Coleman</u>

7   applicable to *all* BPH panels or just the panel at issue in <u>Coleman</u>; (2) how does one reconcile

8   state court holdings contrary to <u>Coleman</u> ,which are also entitled to res judicata/collateral

9   estoppel effect in federal court; (3) did petitioner waive his objection to a no parole policy

10  occasioned by biased BPH panel members when he expressly "temporarily" waived his bias

11  objection when proceeding before the panel.  There may be other issues upon further reflection.

12  However, in this case the complexity of the trees (issues) admit to a rather easy decision in

13  respect to the forest – which has the effect of mooting the "no parole" policy issue.  The solution

14  hinges upon the appropriate remedy even if the petition were to be granted in this case on the "no

15  parole" policy.

16          In <u>Coleman</u>, the appropriate remedy given was an order that Coleman receive a

17  hearing before unbiased commissioners.  As Judge Karlton noted in a follow-up order in

18  <u>Coleman</u> when denying petitioner's request for immediate release, the fact that Coleman had a

19  hearing in 2005 more or less obviated the structural error found for the 1999 hearing.  That is,

20  Judge Karlton found that no evidence had been presented to suggest that the 2005 BPH panel

21  was affected by a no parole policy.  In late 2004, a new Governor had been elected in the latter

22  part of 2004 for whom the record was silent with respect to an enunciated "no parole" policy.

23  Petitioner had received, in effect, the remedy ordered by the initial decision – a hearing from a

24  panel unaffected by the found "no parole" policy – or at least there was no evidence to suggest

25  that the 2005 panel was biased.

26  /////

1    In this case, as far as the record demonstrates, petitioner had parole eligibility

2    hearings after 2002, in 2004 and 2005.  As discussed above, in 2005 the BPH found petitioner

3    suitable for parole.  Clearly, the 2005 panel was not affected by a historical "no parole" policy

4    assertedly instituted by two previous governors.  Because petitioner has received a hearing by an

5    obviously unbiased panel, he has received the only remedy the court could order were it to find

6    that the 2002 panel was biased by a no-parole policy.  Under these circumstances, this issue is

7    moot.

8    The denial of this claim by the Superior Court was not an unreasonable

9    application of clearly established Supreme Court authority.  Accordingly, this claim should be

10   denied.

11   *Conclusion*

12   If the undersigned were reviewing this matter on a clean slate, the undersigned

13   would not analyze the liberty interest involved merely by reference to a checklist of crime

14   circumstances and whether the BPH understood that a murder was serious.  Nevertheless, no

15   binding authority at present would require more than use of the checklist for the circumstances of

16   the crime factors as "some evidence" upon which to deny parole suitability.

17   Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

18   a writ of habeas corpus be denied.

19   These findings and recommendations are submitted to the United States District

20   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

21   days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   /////

25   /////

26   /////

1   shall be served and filed within ten days after service of the objections.  The parties are advised

2   that failure to file objections within the specified time may waive the right to appeal the District

3   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   DATED: 4/17/07

                                            /s/ Gregory G. Hollows

5
                                          GREGORY G. HOLLOWS

6   biggs1169.157                          UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26